UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JAMES SHARKEY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SUSAN CLARKE, CHRISTAL KEEGAN, KRISTOPHER SANCHEZ, NEVADA REAL ESTATE DIVISION,<br><br>　　　　Defendants. | Case No. 2:25-cv-00549-CDS-EJY<br><br><br>**ORDER** |

Pending before the Court is Plaintiffs' proposed Second Amended Complaint and Motion for Leave to Supplement Second Amended Complaint. ECF Nos. 23, 26. For the reasons stated below, the Court grants Plaintiffs' Motion for Leave to Supplement, but recommends dismissing the proposed Second Amended Complaint.

**I.　Screening Standard**

In screening the complaint, a court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim on which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Dismissal for failure to state a claim under § 1915(e)(2) incorporates the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive § 1915 review, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court liberally construes *pro se* complaints and may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In considering whether the complaint is sufficient to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Although the

standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* Unless it is clear the complaint's deficiencies could not be cured through amendment, a *pro se* plaintiff should be given leave to amend the complaint with notice regarding the complaint's deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

**II.    Discussion**

   a.    <u>The Nevada Real Estate Division and Real Estate Commission are Immune From Suit</u>.

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state," operates as a "jurisdictional bar [that] covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature." *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991). Here, because the Nevada Real Estate Division ("NRED") and Nevada Real Estate Commission (the "Commission") are subdivisions of the Nevada Department of Business and Industry, they are immune from suit and must be dismissed with prejudice.

   b.    <u>Deputy Attorney General Christal Keegan is Immune from Suit</u>.

In *Demery v. Kupperman*, the Ninth Circuit explained that "officials performing the functions of a prosecutor in administrative proceedings are entitled to the absolute prosecutorial immunity …." 735 F.2d 1139, 1143 (9th Cir. 1984) *citing Butz v. Economou*, 438 U.S. 478, 511-12 (1978). *Citing Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.), *cert. denied,* 454 U.S. 1102 (1981), the Ninth Circuit explained that "we have held that … immunity … applies to state administrative officials who perform functions analogous to those of a prosecutor." *Id.* Plaintiffs complain about Ms. Keegan who appeared in her role as a Deputy Attorney General for the State of Nevada at NRED proceedings addressing the denial of Mr. Sharkey's broker's license. These appearances, even as described by Mr. Sharkey, demonstrate Ms. Keegan was acting in a function analogous to a prosecutor. *See* ECF No. 23 at 23. For this reason, the Court recommends Christal Keegan be dismissed from Plaintiffs' action with prejudice.

2

      c.    <u>Plaintiffs' Claims Against the Individual Defendants[1] Fail as a Matter of Law</u>.

          1.    *Summary of Allegations*.

Plaintiffs commence their claims against the Individual Defendants by asserting "[e]ach ... Defendant[] acted under color of Nevada state law by exercising authority derived from state statutes, administrative codes, or their official positions within state government or state-authorized regulatory bodies. Their conduct was taken in the course of their official duties or using the power of their office to deprive Plaintiff of his constitutional rights." ECF No. 23 at 13. Plaintiffs then claim, without explanation, that the events in this case date back to 2012. *Id*. at 19. Moving forward to 2024, Mr. Sharkey states he surrendered his real estate salesperson license while waiting for his broker's license, which he labels a procedural trap. *Id*. at 20. Mr. Sharkey contends Defendant Clarke does not like him and, for this reason, after he complained about her to the Nevada Department of Business and Industry, she had her investigator (Gustafson) and Keegan "rubber stamp a claim … that he was practicing real estate without a license." *Id*.

During the 47 day gap that Mr. Sharkey did not have a sales agent or broker license, his wife supposedly continued to work as a salesperson while he was limited to "construction consulting and administrative support." *Id*. at 21. Mrs. Sharkey allegedly closed a commercial deal (her first), but was refused her commission because the broker (Brenda Williams) and an agent (Valerie DiBenedetto) claimed Mr. Sharkey was working without a license. *Id*. A complaint was filed against Mr. Sharkey. Mr. Sharkey says all the allegations were false, and the situation was "created by the division" because of the 47 day lapse without a license. *Id.* at 22.

Mr. Sharkey apparently appeared before the Commission in August 2024 on denial of his broker's license, which is what prompted his complaint to the Department of Business and Industry about Clarke and NRED staff allegedly engaging in misconduct. *Id*. at 23. This, Mr. Sharkey says, led to a retaliatory call from Clarke. *Id*. Mr. Sharkey then accuses Keegan of misconduct during

---

[1] The "Individual Defendants" include Sharath Chandra, NRED Administrator; Susan Clarke, Licensing Manager; Sean Gustafson, Investigator; Dr. Kristopher Sanchez, Director of the Nevada Department of Business and Industry; Donna Ruthe, NRED Commissioner, Forrest Barbee, NRED Commissioner; David Tina, NRED Commissioner, Lee Gurr, NRED Commissioner; and Tina Gurr, NRED Commissioner.

NRED proceedings, references a matter resolved in this Court,[2] and his conviction for simple battery under state law that Mr. Sharkey says NRED mischaracterized as a felony against an older person. *Id*. at 24.

After discussing Keegan's conduct at the August 2024 NRED proceeding, Mr. Sharkey says there was a February 2025 Commission hearing at which a motion in limine filed by his counsel was denied. *Id*. at 27. Mr. Sharkey complains the Commission was biased because all of Keegan's motions were granted, including motions considered in violation of notice requirements established by the Nevada Administrative Code. *Id*. at 28. Mr. Sharkey then repeats that all his motions were denied by the Commission. *Id*. Mr. Sharkey submits this demonstrates a violation of *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978), retaliation, and unequal treatment. *Id*. at 28-32. Finally, Mr. Sharkey complains about dismissal of his state court petition for judicial review (*id*. at 32-33), raises *Monell* for a second time (*id*. at 34), and concludes that he has lost his broker's license and career. *Id*. at 35. Mrs. Sharkey adds her account of events, all involving NRED, where she says she was ignored, not allowed to testify, and stripped of her credibility as a licensed professional. *Id*. at 38.

With respect to the Individual Defendants, Plaintiffs summarize their claims as follows:

- <u>Susan Clarke and Sean Gustafson</u>: Plaintiffs allege Clark and. Gustafson violated their constitutional rights by processing and adjudicating licensing applications, allegedly submitting false statements regarding Plaintiffs' licensing history and criminal record, retaliating by refusing to respond to license activation inquiries, and creating or enforcing agency policy inconsistent with published forms and guidance. *Id*. at 15-16. In addition, Plaintiffs say Gustafson initiated a second enforcement action after Plaintiffs submitted complaints against NRED. *Id*. at 16.

- <u>Sharath Chandra</u>: Chandra allegedly failed to intervene or investigate Plaintiffs' complaints about Clarke, Keegan, and Gustafson, allowed enforcement of unconstitutional practices, and ratified "the agency's policy of discretionary denial and procedural traps." *Id*.

- <u>Dr. Kristopher Sanchez</u>: Sanchez allegedly acted as a supervisor of NRED, received notices of agency misconduct and did not intervene, and permitted retaliatory actions and enforcement of unlawful policies. *Id*. at 17.

---

[2] Mr. Sharkey's prior case in this Court is found at 23-cv-449-CDS-DJA. That case was resolved in favor of the defendant, Sergeant Justin Duke. *Id*. (ECF No. 97 at 11 finding "Sergeant Duke argues that he is entitled to summary judgment on Sharkey's Fourteenth Amendment claim because (1) Duke did not deprive Sharkey of a liberty interest, (2) Duke's alleged threat was not real and immediate, (3) Sharkey cannot show that Duke would deprive him of his liberty without due process, and (4) he is entitled to qualified immunity."). Mr. Sharkey has appealed this decision.

4

- <u>The Five NRED Commissioners (Ruthe, Barbee, Tina, Lee Gurr, and Tina Gurr)</u>: These five individuals allegedly failed to act impartially during an adjudication, ratified findings based on false evidence and retaliation, failed to ensure due process, and failed to ensure equal protection. *Id*.

    2.    *Rooker-Feldman Bars Plaintiffs' Claims seeking review of state court proceedings and outcomes.*

Federal district courts lack subject matter jurisdiction to exercise appellate review over final state court judgements. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). What has become known as *Rooker-Feldman* is applied "to cases ... brought by state-court losers ... inviting district court review and rejection of [a state court's] judgments." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). "Reduced to its essence, *Rooker* held that when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003). *See also Black v. Haselton*, 663 Fed.Appx. 573, 575 (9th Cir. 2016) (*Rooker-Feldman* bars federal review of claims arising from a "state court's purportedly erroneous judgment.").

Here, Plaintiffs' claims, while styled as violations of the United States Constitution, seek review of and relief from Plaintiffs' losses before NRED, the Commission, the state trial court, and the Nevada Court of Appeals. Plaintiffs disagree with each of the decisions reached, but offer nothing more than the state agencies and courts repeatedly got the decisions wrong. ECF No. 23 at 27-28. This is obvious in Plaintiffs' allegations regarding motion practice before NRED and the Commission. *Id*. It is also obvious when Mrs. Sharkey claims that "[d]uring the enforcement process" she was "undermined … as a licensed professional" and not allowed to testify on behalf of her husband. *Id*. at 37. Finally, this is demonstrated by Plaintiffs' request for relief from the state court's dismissal of their petition for judicial review and the Nevada Court of Appeals' affirmation of that decision. ECF Nos. 23 at 32-33; 26 (Plaintiffs' Supplement to the Second Amended Complaint).

More specifically, Plaintiffs allege procedural and substantive due process violations, denial of judicial review, abuse of prosecutorial and official authority, and a First Amendment petition for

redress claim on pages 12 and 13 of the Second Amended Complaint. ECF No. 23 at 12 and 13. These claims attack and seek relief from state agency and state court proceedings. As stated above, the Court finds these claims are barred by *Rooker-Feldman*.

          3.     *Plaintiffs fail to state a claim under Monell.*

Municipalities, such as counties and their departments, may be liable under § 1983 if an unconstitutional action "'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (citing *Monell*, 436 U.S. at 690). However, "the Supreme Court has expressly declined to extend *Monell*'s theory of municipal liability under § 1983 to state entities." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010). Because all of Plaintiffs' claims asserted under *Monell* are against Nevada state entities (NRED and the Commission), these claims fail as a matter of law.

          4.     *Substantive and Procedural Due Process.*

          A.     <u>Substantive Due Process</u>.

"To prevail on a … substantive due process claim, the plaintiff must first identify a liberty or property interest protected by the Constitution of which the state deprived him or her" (*Goodspeed Airport v. East Haddam Land Trust, Inc.,* 166 Fed.Appx. 506, 508 (2d Cir. 2006)); and second must demonstrate that the defendants' actions were "arbitrary, or conscience-shocking, in a constitutional sense." *Id*. *See also Board of Regents v. Roth,* 408 U.S. 564, 576 (1972) (as a threshold requirement for a claim for violation of substantive due process is the termination or revocation of an existing property interest in a benefit created by an independent source such as state or federal law).

Initially, the Court finds Mrs. Sharkey identifies no substantive liberty or property interest of which she was denied by a state actor. Instead, Mrs. Sharkey says only that private individuals (a broker and agent) denied her a commission to which she was due. Thus, Mrs. Sharkey's substantive due process claim fails as a matter of law.

Second, Mr. Sharkey alleges procedures were violated and processes were unfair because Defendants were biased. Mr. Sharkey alleges that decisions were made in favor of the opposing party in proceedings before NRED and the Commission, where he was represented by an attorney

6

(ECF No. 23 at 27 referencing "Plaintiff's counsel"), and his attempts to obtain relief in state courts were dismissed. *Id*. at 32; ECF No. 26. Ultimately, Mr. Sharkey claims he lost his real estate license and career.[3]

Even assuming Mr. Sharkey lost a substantive property right, there is no alleged conduct that shocks the conscience. A showing of negligence is insufficient to make out a constitutional due process claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Even intentional wrongs seldom violate the Due Process Clause. That is, even conduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also "shocks the conscience." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002). Said plainly, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense" shocks the conscience. *Lewis*, 523 U.S. at 846 (internal quotation and citation omitted). Determinations of what is egregious is not made in hindsight; decisions made by a government actor must shock the conscience at the time the government actor made the decision. *See e.g. DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 202, (1989).

Mr. Sharkey alleges no set of facts that establish shocking or egregious events. He complain of procedural irregularities, outcomes with which he disagrees, and people who he claims were biased in decision making. Even assuming some events were intentional, these events, as alleged in the 28 substantive pages of Plaintiffs' Second Amended Complaint, are not shocking.

The Court finds Plaintiffs fail to state a substantive due process claim and recommends these claims be dismissed with prejudice.

### B.    Plaintiffs Do Not State a Procedural Due Process Claim.

When a party claims violations of procedural due process under § 1983 arising from alleged conflicts of interest by members of a decision making body like a state board or commission, the plaintiff must show that no pre- or post-deprivation remedy exists in the state courts. *Zinermon v. Burch,* 494 U.S. 113 (1990); *Parratt v. Taylor,* 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). When the alleged wrong is the deprivation of procedure without due process; the wrong occurs only if the state provides no remedy to redress the

---

[3] No loss of liberty is alleged by either Plaintiff. ECF No. 23, *generally*.

procedural violation. *Zinermon,* 494 U.S. at 125-26. Thus, even assuming some procedural error, wrongful denial of motion practice, denial of the opportunity to testify, or some other process adversely affected Plaintiffs' interests, if adequate state remedies exist for redress, Plaintiffs cannot state a procedural due process claim under § 1983.

Here, Mr. Sharkey complains about being denied a broker's license, NRED Commissioner and employee misconduct, obtaining a hearing at which there were alleged irregularities and misstatements of fact, a disciplinary hearing initiated by the Commission, the Commission hearings at which his motions were denied and the opposing party's motions were granted, losing before the Commission, filing a petition for judicial review to which the Deputy Attorney General responded with a Motion to Dismiss, the dismissal of his Petition for Judicial Review by the Eighth Judicial District Court, and the dismissal decision being upheld by the Nevada Court of Appeals. ECF No. 23 at 22-32; ECF No. 26. Mrs. Sharkey says she was not permitted to testify and was otherwise ignored during certain NRED proceedings, but these are not substantive liberty or property interest. But Plaintiffs' pleading demonstrates that after proceedings before NRED and the Commission, they had access to and engaged in process before the state trial court and Nevada Court of Appeals. Thus, Plaintiffs' pleading demonstrates they were provided with a full process and opportunity to be heard. Indeed, Plaintiffs took advantage of the process, but were unsuccessful. Under these circumstances, the Court finds Nevada provided Plaintiffs all the process due.

Based on the foregoing, the Court recommends Plaintiffs procedural due process claims be dismissed with prejudice.

                5.      *Equal Protection*

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Normally, to state an Equal Protection claim "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). The Supreme Court

1  has also "recognized successful equal protection claims brought by a 'class of one,' where the
2  plaintiff alleges that she has been intentionally treated differently from others similarly situated and
3  that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528
4  U.S. 562, 564 (2000).

5      It is worth noting that Mr. Sharkey raises no facts relating to or supporting an equal protection
6  claim. He does not identify himself as a member of a protected class; he offers no facts
7  demonstrating he was treated differently or less favorably than those outside his protected class; and
8  he offers no facts regarding discrimination. ECF No. 23, *generally*. Rather, Mr. Sharkey speaks of
9  bias, dislike, alleged misrepresentations, and violations of procedure that do not support an Equal
10 Protection claims. Mr. Sharkey's Equal Protection clause claim fails and should be dismissed with
11 prejudice.

12     Mrs. Sharkey says she is the sole owner of Plaintiffs' real estate business and, thus, this is a
13 woman-owned business. *Id*. at 36. Mrs. Sharkey also says she was denied commissions she earned
14 and retaliated against by virtue of the false accusations leveled against Mr. Sharkey regarding
15 "practicing real estate without a license." *Id*. at 37. Mrs. Sharkey submits she was denied the
16 opportunity to defend Mr. Sharkey in Commission proceedings and was accused of being willing to
17 say anything in the defense of her husband. *Id*. at 37-38. Mrs. Sharkey appears to identify her
18 protected class as that of a "wife." *Id*. at 38 (she was "stripped of … [her] credibility" because she
19 is Mr. Sharkey's wife."). Mrs. Sharkey says "no action was taken against "Brenda" or "Valerie" for
20 withholding her commission. *Id*.

21     To the extent Mrs. Sharkey suggests her marital status is a protected classification, her claim
22 fails. *Swanner v. Anchorage Equal Rights Comm'n,* 513 U.S. 979, 982 (1994) (a person's marital
23 status, unlike his race, religion or gender, does not put him in a *constitutionally* protected class). To
24 the extent Mrs. Sharkey claims her gender (a woman) places her in a protected class, her claim fails
25 because she only compares herself to other women (Brenda and Valerie) who were allegedly treated

9

more favorably than she was. Under the facts alleged, the Court finds Mrs. Sharkey fails to state a claim under the Fourteenth Amendment Equal Protection clause.[4]

        d.      <u>Plaintiffs Should Not Be Granted Leave to File What Would be the Fourth Complaint</u>.

This is Plaintiffs' third attempt to plead a viable claim. *See* ECF Nos. 1-1, 20, 23. Plaintiffs amended their original Complaint before screening. ECF No. 20. The First Amended Complaint was screened and leave to amend was granted. ECF No. 21. The pending Second Amended Complaint is largely one that asks the Court to find error with state administrative and court proceedings and otherwise fails to state claims upon which relief can be granted. ECF No. 23.

Plaintiffs' Second Amended Complaint does not separate out claims, but instead provides a list of alleged violation of the U.S. Constitution followed by twenty-eight pages of narrative. ECF No. 23 at 12-40. As explained when the Court screened Plaintiffs' First Amended Complaint, the Defendants named cannot be expected to decipher the Second Amended Complaint and respond to such length and prolixity. *Fritz v. County of Kern*, Case No. CV-F-07-377 OWW/TAG, 2009 WL 382741, at *2 (E.D. Cal. Feb. 13, 2009). The Court's discretion to deny leave to amend is particularly broad where plaintiff has had prior opportunities to amend. *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

---

[4] Plaintiffs cannot state a Sixth Amendment right to counsel claim. As a general proposition, a civil litigant has no right to counsel. *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18 (1981); *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). Under "exceptional circumstances" a court may appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1). *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), *cert. denied sub nom. Gerber v. Agyeman*, 545 U.S. 1128 (2005). When determining whether "exceptional circumstances" exist, a court must consider "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983). As discussed above, the Court finds Plaintiffs do not establish exceptional circumstances or a likelihood of success on the merits of their claims. Plaintiffs' alleged violation of the right to counsel fails.

Plaintiffs' Eighth Amendment claim fails as a matter of law. *Lee*, 250 F.3d at 686 ("The Eighth Amendment's prohibition of cruel and unusual punishments applies only after [a criminal] conviction and sentence.") (citations and internal quotation marks omitted).

Plaintiffs fail to state a First Amendment Freedom of Speech or Freedom of Association claim. The First Amendment provides as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." Plaintiffs fail to identify what speech was attempted, how such speech was abridged, or by whom it was abridged. Plaintiff also fail to identify how or by whom his freedom of association was violated by a state or federal actor. Failure to identify specific acts committed by a defendant that caused alleged harm to a plaintiff is grounds for dismissal of plaintiff's claim. *Kwai Fun Wong v. United States*, 373 F.3d 952, 966–67 (9th Cir. 2004), abrogated on other grounds by *Pettibone v. Russell*, 59 F.4th 449 (9th Cir. 2025).

### III. Order

IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to Supplement Second Amended Complaint (ECF No. 26) is GRANTED.

### IV. Recommendation

IT IS HEREBY RECOMMENDED that Plaintiffs' Second Amended Complaint be dismissed with prejudice as Plaintiffs do not state a claim upon which relief can be granted and, given this is their third attempt to do so, further opportunity to amend should not be granted.

Dated this 6th day of November, 2025.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Under Local Rule IB 3-2, any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court holds the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).