UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

James and Audrey Sharkey,

               Plaintiffs

v.

Susan Clarke, et al.,

               Defendants

Case No.: 2:25-cv-00549-CDS-EJY

**Order Sustaining in Part Plaintiffs' Objection and Accepting in Part and Modifying the Magistrate Judge's Report and Recommendation**

[ECF Nos. 28, 29]

James and Audrey Sharkey[1] bring this civil-rights action under 42 U.S.C. § 1983. They sue thirteen defendants for alleged constitutional violations related to the denial of James's application for a broker's license.[2] Second am. compl., ECF No. 23. In May 2025, United States Magistrate Judge Elayna J. Youchah screened the plaintiffs' second amended complaint and issued a report recommending (R&R) dismissal with prejudice because the plaintiffs failed to state a claim upon which relief may be granted. R&R, ECF No. 28. Judge Youchah also recommends denying further leave to amend because this marked the plaintiffs' third attempt to plead viable claims. *Id.* at 10. The plaintiffs object to the dismissal recommendation. Obj., ECF No. 29. After conducting a de novo review, I sustain the plaintiffs' objection in part, accept in part and modify the R&R, and dismiss with prejudice the plaintiffs' second amended complaint.

I.     **Legal standard**

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court may "accept, reject, or modify, in whole or in part, the findings or

---

[1] Because James Sharkey and Audrey Sharkey have the same last name, I refer to James and Audrey by their first names for clarity's sake. I intend no disrespect by doing so.

[2] The named defendants are Susan Clarke, Christal Keegan, Kristopher Sanchez, the Nevada Real Estate Division, the Nevada Real Estate Commission, Sharath Chandra, Sean Gustafson, Dr. Kristopher Sanchez, Donna Ruthe, Forrest Barbee, David R. Tina, Tina Gurr, and Lee Gurr. ECF No. 23.

recommendations made by the magistrate judge." *Id.* A magistrate judge's order should only be set aside if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Burdick v. Comm'r IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure." *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014).

## II.    Discussion

The plaintiffs raise seven objections. ECF No. 29. Specifically, they argue that the R&R errs in (1) applying sovereign immunity without considering *Ex parte Young*, (2) granting absolute prosecutorial immunity to Keegan, (3) applying *Rooker-Feldman* to bar all claims, (4) dismissing *Monell* claims, (5) dismissing substantive and procedural due process claims, (6) dismissing equal protection claims, and (7) dismissing other claims. *Id.* at 3–8. They further assert that the R&R abuses discretion by denying further amendment. *Id.* at 8.

### A.    Plaintiffs' objection that the R&R errs in applying sovereign immunity without considering *Ex parte Young* is overruled.

The plaintiffs' first objection disputes the R&R applying sovereign immunity, arguing that their claim is permissible under the *Ex parte Young* exception because: (1) they are suing state officials in their official capacities; and (2) they seek prospective injunctive relief—i.e., fair reconsideration of James's license and barring further retaliation. *Id.* at 3.

The plaintiffs concede that the Nevada Real Estate Division and Nevada Real Estate Commission are immune under the Eleventh Amendment. *Id.* They argue, however, that the magistrate judge erred by "failing to recognize that [they] seek prospective injunctive relief . . . which is permissible against state officials in their official capacity under Ex parte Young." *Id.*

The Supreme Court has long held that a plaintiff may not circumvent the Eleventh Amendment by suing specific state officials instead of the State. *See Hafer v. Melo*, 502 U.S. 21, 25

(1991) (holding that states and state actors are not "persons" under the provisions of § 1983). Thus, suits against state actors "acting in their official capacities" are actually suits against the state and are thus barred by the Eleventh Amendment. *Id.* at 26.

But sovereign immunity under the Eleventh Amendment is not limitless. The *Ex parte Young* doctrine is a very narrow exception to Eleventh Amendment immunity. Under *Ex parte Young*, "individuals may sue state officials in federal court for *prospective* relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity." *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019). Specifically, it does not bar "claims seeking prospective injunctive relief . . . to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

Although *Ex parte Young* permits suits against state officials for prospective relief to end an ongoing violation of federal law, the exception is narrow and does not apply where the requested relief is retrospective or would require the court to review and overturn past state action. *See Ex parte Young*, 209 U.S. at 155–56; *Green v. Mansour*, 474 U.S. 64, 68 (1985). Therefore, to determine whether the *Ex parte Young* doctrine applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (quoting *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

The plaintiffs fail to satisfy both prongs. First, they fail to plausibly allege an ongoing violation of federal law. Because there is no fundamental constitutional right to obtaining a broker's license, the denial of such a license does not, by itself, give rise to a constitutional violation. "[A] professional license, *once conferred*, constitutes an entitlement subject to constitutional protection." *Gallo v. U.S. Dist. Court*, 349 F.3d 1169, 1179 (9th Cir. 2003) (emphasis added). Said otherwise, licensed professionals are entitled to due process once a license is issued (entitling them to due process before revocation), but there is not a constitutional right to be

issued a license in the first place. Second, prospective relief aims to prevent future harm or continuing violations rather than remedy past wrongs. *See Green*, 474 U.S. 64. The plaintiffs pray for "[i]njunctive relief prohibiting further enforcement based on the fabricated moral turpitude standard and procedural traps, and directing reconsideration of [James's] broker license application." ECF No. 23 at 41. This requested relief is not forward-looking in the sense required by *Ex parte Young*. Although the plaintiffs seek relief "prohibiting further enforcement," this request ultimately seeks judicial intervention "directing reconsideration" of a license decision that has already occurred, which falls outside the scope of the *Ex parte Young* exception. The plaintiffs have not demonstrated that the *Ex parte Young* exception applies, nor that the R&R is clearly erroneous or contrary to law. This objection is overruled.

> **B. Plaintiffs' objection that the R&R errs in granting absolute prosecutorial immunity to Keegan is overruled.**

The plaintiffs next object to the R&R's conclusion that defendant Christal Keegan is entitled to absolute prosecutorial immunity. They argue that this "is erroneous because immunity is functional, not titular." ECF No. 29 at 4 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The plaintiffs contend that Keegan's conduct was investigatory in nature and therefore outside the scope of such immunity, and that, as a result, "qualified—not absolute— immunity applies at most." *Id.* I disagree.

The R&R offers that in *Demery v. Kupperman*, the Ninth Circuit held that "officials performing the functions of a prosecutor in administrative proceedings are entitled to the absolute prosecutorial immunity." ECF No. 28 at 2 (citing *Demery*, 735 F.2d 1139, 1143 (9th Cir. 1984)). The magistrate judge reasons that Keegan, who appeared at the Nevada Real Estate Division (NRED) proceeding on behalf of the State of Nevada, was acting in a function analogous to a prosecutor and, as such, is immune from suit. *Id.*

In their objection, the plaintiffs cite *Buckley v. Fitzsimmons* to support their argument that the Supreme Court denied immunity for "investigative or administrative acts, like fabricating

evidence pre-hearing." ECF No. 29 at 4; 509 U.S. at 261. However, the plaintiffs' reliance on *Buckley* is misplaced. In *Buckley*, the Court held that the prosecutor was not entitled to absolute immunity because he was not acting in his role as an advocate for the state at the time of the alleged misconduct. *Buckley*, 509 U.S. at 261. That is the distinction here: unlike in *Buckley*, Keegan's alleged actions were undertaken in her role as an advocate representing the State in an administrative proceeding. ECF No. 23 at 24–25. And "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 274. Here, a plain reading of the complaint shows that the allegations alleged against Keegan are directly related to her role "while representing the State in administrative and judicial proceedings," ECF No. 23 at 15, so she is entitled to absolute immunity. *See Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) (holding that absolute immunity protects a prosecutor who is presenting evidence at a hearing or preparing for either the initiation of judicial proceedings or trial).

The plaintiffs' attempt to recharacterize Keegan's actions as investigatory is unavailing; and *Kalina v. Fletcher* does not support their position. ECF No. 29 at 4 (citing *Kalina*, 522 U.S. 118, 129–31 (1997)). In *Kalina*, the Supreme Court denied absolute immunity only where the prosecutor personally attested to the truth of facts in a sworn affidavit, thereby acting as a complaining witness rather than as an advocate. *Kalina*, 522 U.S. at 120, 130–31. By contrast, the conduct challenged here remains protected by absolute prosecutorial immunity because Keegan was representing the State in an administrative proceeding.[3] And the functional analysis

---

[3] The petitioners mischaracterize *Kalina* as barring "immunity for falsifying affidavits." ECF No. 29 at 4. *Kalina* does not bar absolute immunity for a prosecutor's false statements. Rather, it bars absolute immunity for a prosecutor's sworn testimony as a complaining witness. Thus, the triggering fact barring immunity in *Kalina* is not that the prosecutor gave factually inaccurate statements in her affidavit; it's that she gave her own sworn testimony as a complaining witness. *See Kalina*, 522 U.S. at 129–30 ("Although the law required that document to be sworn or certified under penalty of perjury, neither federal nor state law made it necessary for the prosecutor to make that certification. In doing so, petitioner performed an act that any competent witness might have performed."); *id.* at 130–31 ("Testifying about facts is the function of the witness, not of the lawyer. . . . Even when the person who

supports absolute—not qualified—immunity here. On this point, the plaintiffs have not shown that the R&R is clearly erroneous or contrary to the law. Accordingly, their objection is overruled.

### C. Plaintiffs' objection that the R&R errs in applying *Rooker-Feldman* to bar all claims is sustained in part.

In this objection, the plaintiffs argue that the R&R misapplies *Rooker-Feldman*. They contend that *Rooker-Feldman* "is narrow and does not bar independent § 1983 claims challenging unconstitutional conduct underlying state proceedings." ECF No. 29 at 5 (citing *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)).

The *Rooker-Feldman* doctrine is a "relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state-court judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (citing *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)). "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction." *Noel*, 341 F.3d at 1164. In contrast, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.*

Here, the plaintiffs' alleged injuries arise from NRED's denial of James's broker's license application and their unsuccessful appeals to the district court and court of appeals. ECF No. 23 at 23–30, 33–34, 39–40. The R&R properly dismisses the plaintiffs' allegations challenging the decisions of the state trial and appellate courts under the *Rooker-Feldman* doctrine. ECF No. 28 at 5–6. However, the doctrine does not apply to a suit seeking review of a state agency action. *Verizon Md., Inc.*, 535 U.S. at 644 (holding that the doctrine "has no application to judicial review of executive action, including determinations made by a state administrative agency."). Nor does

---

makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.").

*Rooker-Feldman*, as argued in the plaintiffs' objection, bar this court from reviewing the state actions underlying the § 1983 claim, to the extent that such actions do not include a state court judgment in itself. *See Skinner*, 562 U.S. at 523 (challenging the constitutionality of a DNA statute rather than the state court judgment itself).

In their objection, the plaintiffs argue that their action does not collaterally attack the merits of the state court decisions, but rather, "allege extrinsic violations like retaliation for speech . . . and procedural traps . . .causing harm." ECF No. 29 at 5. Although the R&R misapplies *Rooker-Feldman* to the plaintiffs' buried, and somewhat difficult to construe, allegations by finding that the plaintiffs' "claims attack and seek relief from state agency and state court proceedings," ECF No. 28 at 6, the plaintiffs do not seek review of the state agency action here. Instead, the plaintiffs claim injuries as "a direct result of the retaliatory and unconstitutional actions by the Nevada Real Estate Division" and seek "[d]eclaratory relief that Defendants violated [James's and Audrey's] constitutional rights under the First and Fourteenth Amendments." ECF No. 23 at 39–41 (quotation modified). And, at least in part, the plaintiffs do seek to overturn the state court's decisions. To that end, their efforts to challenge the state courts' decisions are barred by *Rooker-Feldman.* Nonetheless, as discussed above, and conceded to by the plaintiffs, the Nevada Real Estate Division is immune under the Eleventh Amendment. *Green*, 474 U.S. 64 (holding that declaratory judgments that merely declare past violations of federal law are barred by the Eleventh Amendment when there is no continuing violation to be enjoined). And I find there is no continuing violation to be enjoined here.

But even if they weren't barred by the Eleventh Amendment, the plaintiffs' claims still fail because the amended complaint fails to state a claim. The First Amendment provides that Congress shall make no law abridging the right of the people "to petition the Government for redress of grievances," a right that is "cut from the same cloth" as the other guarantees in the First Amendment. *McDonald v. Smith*, 472 U.S. 479, 482 (1985). It is "an assurance of a particular freedom of expression." *Id.* The Petition Clause guarantees only that an individual may "speak

freely and petition openly," and to guarantee that such individuals will be free from retaliation by the government for doing so. *Smith v. Ark. State Highway Employees*, 441 U.S. 463, 464–65 (1979) (per curiam). The amended complaint does not state any allegations that could give rise to a potential violation of their rights under the First Amendment.

I therefore sustain in part the plaintiffs' objection here. Judge Youchah correctly reasoned that *Rooker-Feldman* controls the disposition of the claims against the state trial and appellate courts. But the court sustains the plaintiffs' objection asserting that *Rooker-Feldman* does not apply to a state administrative proceeding. However, because the Eleventh Amendment controls, and NRED is a state administrative agency, it is entitled to immunity from claims. *See* U.S. Const. amend. XI; *Milstein v. Cooley*, 257 F.3d 1004, 1007 (9th Cir. 2001) ("Congress did not abrogate state sovereign immunity when it enacted §§ 1983 and 1985."); *see also Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of U.S.*, 577 F. Supp. 3d 1106 (D. Or. 2021), *aff'd*, 2023 WL 6875413 (9th Cir. Oct. 18, 2023) (noting that a state administrative agency was entitled to Eleventh Amendment sovereign immunity from claims brought in federal court against the agency, including for conspiracy to deprive a person of civil rights or privileges, arising from litigant purportedly being the subject of personal vendettas in his previous cases). With that modification, I accept the R&R on this issue and adopt the recommendation that the claims seeking review of the state court proceedings and outcomes be dismissed.

**D.  Plaintiffs' objection that the R&R errs in dismissing *Monell* claims is overruled.**

Here, the plaintiffs assert that the R&R overlooks that they "allege customs/policies by NRED/Commission officials (e.g., 'case-by-case' discretion enabling bias, failure to intervene) causing violations." ECF No. 29 at 6. They further argue that, for officials, "§ 1983 liability attaches if the policies drove harms." *Id.* Their arguments are unpersuasive.

Under *Monell*, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To establish

municipal liability for failing to act to preserve constitutional rights, the Ninth Circuit requires that plaintiffs demonstrate "(1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation.'" *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (citation modified).

At most, the plaintiffs allege dissatisfaction with how officials exercised discretion in James's application proceeding, which is insufficient to establish municipal liability under *Monell*. Their assertions that the "selective enforcement of procedural rules" and "Keegan's reliance on this discretionary 'policy'" cannot establish a municipal policy or custom, as isolated decisions such as this, do not reflect the persistent, widespread, or longstanding conduct required for *Monell* liability. ECF No. 29 at 28–30; *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

The plaintiffs offer no meaningful factual support or analysis as to how *Monell* applies, much less demonstrate that the R&R is clearly erroneous or contrary to the law. For this reason, the plaintiffs' objection is overruled.

### E.  Plaintiffs' objection that the R&R errs dismissing substantive and procedural due process claims is overruled.

In this objection, the plaintiffs first argue that the R&R errs by finding "no 'conscience-shocking' conduct," and "errs by undervaluing allegations of arbitrary retaliation and bias in licensing." ECF No. 29 at 6. Although, as correctly noted in the R&R, the plaintiffs have not alleged conscience-shocking conduct, they still fail to make the threshold showing for a substantive due process claim. "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of*

*Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Although the Ninth Circuit recognizes a right to occupational liberty, that right is not a "fundamental" one. *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1328 (9th Cir. 1985) ("There is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right for the purpose of invoking strict scrutiny under the Equal Protection Clause."). The second amended complaint fails to identify any fundamental right protected by substantive due process.

The Ninth Circuit applies the rational basis review to licensing-related substantive due process claims. *Gerhart v. Lake Cnty. Mont.*, 637 F.3d 1013, 1020–21 (9th Cir. 2010). Under that deferential standard, government action violates substantive due process only if it is arbitrary, irrational, or lacking any conceivable legitimate governmental purpose. *Id.* Because the plaintiffs challenge discretionary licensing decisions, rational basis review applies. Their allegations fail to plausibly show that the challenged conduct was arbitrary or irrational. The plaintiffs allege no more than dissatisfaction with NRED's discretionary licensing decisions, which is insufficient to state a constitutional violation. "There is no protected property interest if 'the reviewing body has discretion . . . to impose licensing criteria of its own creation.'" *Shanks v. Dressel*, 540 F.3d 1082, 1088–89 (9th Cir. 2008) (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164-65 (9th Cir. 2005)).

Next, the plaintiffs object to the dismissal of their procedural due process claims. ECF No. 29 at 6–7. They argue that the R&R "ignores 'procedural traps,'" and "[w]hen state procedures are fundamentally unfair, § 1983 claims lie." *Id.* at 7 (citing *Ward v. City of Barstow*, 932 F.3d 817, 820 (9th Cir. 2019)).[4] The plaintiffs' claims fail because their "pleading demonstrates they were provided with a full process and opportunity to be heard. Indeed, as Judge Youchah found, the plaintiffs took advantage of the process, but were unsuccessful." ECF No. 28 at 8. I agree with her analysis.

---

[4] This citation provided by the plaintiffs is *Huu Nguyen v. Nissan N. Am., Inc.*, but assumes this is a scrivener's error. The correct citation is *Ward v. City of Barstow*, 749 F. App'x 529 (9th Cir. 2018).

A procedural due process claim requires the plaintiffs to show they were (1) deprived of a constitutionally protected liberty or property interest, and (2) denied adequate procedural protections. *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998). The plaintiffs have not plausibly alleged the deprivation of a protected liberty or property interest, and their amended complaint is devoid of allegations supporting either element. Further, the plaintiffs' objection does not explain how the amended complaint satisfies either element of a procedural due process claim and therefore fails to identify any error in the R&R. So it is overruled.

### F. Plaintiffs' objection that the R&R errs dismissing equal protection claims is overruled.

The plaintiffs argue that the R&R overlooks James's "'class of one' theory." ECF No. 29 at 7. It is unclear from the plaintiffs' 42-page complaint that they assert a "class-of-one" claim.

To state a valid equal protection claim, a plaintiff must allege facts demonstrating that the defendants acted with the intent and purpose to discriminate against them based upon membership in a protected class, or that the defendants purposefully treated them differently than similarly situated individuals, without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Although the plaintiffs explain how James was similarly situated, they did not allege that James is a member of a protected class.[5] Nor did they allege that the defendants denied James's broker license application with the purpose of discriminating against him due to his membership in a protected class. Though, in their objection, the plaintiffs contend that "James alleges intentional unequal treatment," ECF No. 29 at 7, there are no factual allegations in the amended complaint supporting this statement, so the R&R properly recommends dismissing this claim.

---

[5] Examples of protected classes include classifications based on race, ancestry, alienage, and gender. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004). People with "similar or worse criminal backgrounds" do not comprise a protected class. *See* ECF No. 23 at 29.

The plaintiffs also fail to state a "class of one" claim. To succeed on a class of one claim, a plaintiff must demonstrate that the defendant (1) intentionally (2) treated the plaintiff differently than others similarly situated (3) without a rational basis. *Gerhart*, 637 F.3d at 1022. Here, the plaintiffs argue that James was treated differently than others similarly situated because a "comparator [], who testified to having a similar or worse criminal record, received his broker license in just 14 days without delay, scrutiny, or hearing." ECF No. 23 at 29. While this fact, although speculative, is relevant to the second element of a "class of one" claim—that James was treated differently—the plaintiffs allege no facts that could show the presence of the other two elements. Beyond conclusory allegations, the plaintiffs do not allege facts showing the defendants had discriminatory intent when they denied James's broker license application. Both Supreme Court and Ninth Circuit case law make clear that, to state a class-of-one equal protection claim, a plaintiff *must* allege purposeful, intentional differential treatment, not merely disparate treatment. *See Olech*, 528 U.S. at 564 (noting that "the Village intentionally demanded a 33–foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15–foot easement from other similarly situated property owners"); *Gerhart*, 637 F.3d at 1022 (noting that, for a class-of-one claim, plaintiff had to "show that the Commissions intended to treat him differently from other applicants"). As to the third element, merely alleging "arbitrary enforcement" is insufficient. Without more, the plaintiffs have not sufficiently alleged James's class-of-one equal protection violation.

They also argue that "Audrey's gender/martial claims show disparate treatment (e.g., credibility stripped as 'wife,' unlike Brenda/Valarie)." ECF No. 29 at 7. To the extent the plaintiffs premise their equal protection claim on marital status, that claim fails as a matter of law because marital status is not a protected class. *See Guitron v. Wells Fargo Bank, N.A.*, 2012 WL 2708517, at *19 (N.D. Cal. July 6, 2012), *aff'd sub nom.*, 619 F. App'x 590 (9th Cir. 2015) (holding that plaintiff did not establish that she was a member of a protected class, because "marital status" cannot be the basis of such a class). Nor can the plaintiffs allege violations against

Audrey based on her status of being married to James. *Cf. Nakai v. Friendship House Ass'n of Am. Indians, Inc.*, 15 Cal. App. 5th 32, 40 (Cal. Ct. App. 2017) ("While laws prohibiting marital status discrimination are to prevent discrimination against classes of people, they do not extend to the status of being married to a particular person." (quotations omitted)).[6] Despite their assertion to the contrary, I find the magistrate judge correctly dismissed this claim as well. Accordingly, this objection is overruled.

**G.   Plaintiffs' objection that the R&R errs dismissing other claims is overruled.**

In their seventh objection, the plaintiffs contend that the R&R errs in recommending dismissal of their First, Sixth, and Eighth Amendment claims.

The R&R recommends dismissing the plaintiffs' First Amendment claims because they fail to identify (1) what speech was attempted, (2) how such speech was abridged, or by whom it was abridged, (3) how or by whom his freedom of association was violated by a state or federal actor, and (4) which specific acts of the defendant caused the alleged harm. ECF No. 28 at 10 n.4. In turn, the plaintiffs merely state that "[r]etaliation is plausible." ECF No. 29 at 7. The plaintiffs' sparse objection is insufficient to overcome their burden in demonstrating any error in the R&R.

The plaintiffs' attempt to "reframe" any Sixth Amendment allegations "as due process" fails as a matter of law. ECF No.29 at 7. By its plain text, "[t]he protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions'" and cannot be repackaged as a due process claim in this civil action. *See Austin v. United States*, 509 U.S. 602, 607 (1993) (citing *United States v. Ward*, 448 U.S. 242, 248 (1980)). The R&R correctly recommends dismissing this claim because the Sixth Amendment is not applicable to civil proceedings nor hearings before NRED.

---

[6] "Illustrative examples of marital discrimination include refusing 'to hire unwed mothers because they were unwed, a refusal to hire single people because they were single, or the granting of maternity leave to married teachers only.'" *Nakai*, 15 Cal. App. 5th 32 (quoting *Chen v. County of Orange*, 116 Cal. Rptr. 2d 786 (Cal. Ct. App. 2002)).

Their argument to "reframe" their Eighth Amendment claim "under due process" suffers the same defect. ECF No. 29 at 8. The Eighth Amendment's protections against cruel and unusual punishment are triggered only after a criminal conviction. The Supreme Court has been clear that the Eighth Amendment "was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 653 (1977). Because of this limitation, the Eighth Amendment does not apply to civil actions, including civil fines or regulatory enforcement actions; thus, the R&R properly recommends dismissing this claim. In sum, these objections lack merit and are overruled.

### H. Plaintiffs' objection that the R&R abuses discretion by denying further amendment is overruled.

Finally, the plaintiffs argue that the R&R errs in denying leave to amend because the deficiencies are allegedly curable, and "[p]ro se litigants get leave unless futile." ECF No. 29 at 8. Contrary to the plaintiffs' contention, the magistrate judge did not abuse discretion by recommending that I deny further leave to amend. I also believe additional amendment is not warranted. While Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should freely grant leave to amend "when justice so requires," district courts have "broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint." *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980). Here, the plaintiffs have already had two opportunities to amend and have failed to cure the inadequacies of their original complaint. Further amendment therefore appears futile. ECF Nos. 16, 21; *see also Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) ("Where the plaintiff has previously filed an amended complaint . . . the district court's discretion to deny leave to amend is particularly broad.") (citations and internal quotation marks omitted). Accordingly, this objection is overruled.

14

III.    Conclusion

It is hereby ordered that the magistrate judge's report and recommendation [ECF No. 28] **is modified as set forth in this order, but otherwise accepted**, and the plaintiffs' objection [ECF No. 29] **is sustained in part as explained herein**.

The plaintiffs' second amended complaint [ECF No. 23] **is dismissed with prejudice**. The Clerk of Court is kindly instructed to enter judgment accordingly and close this case.

Dated: July 10, 2026

_____
Cristina D. Silva
United States District Judge

15